IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FILED
U.S. DISTRICT COURT
2009 MAY 18 AM 10:00

CLERK_____
SO. DIST. OF GA.

| | |
|---|---|
| TERRY J. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: CV508-029 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of the Commissioner, denying his claim for Disability, Disability Insurance Benefits, and Supplemental Security Income ("SSI"). Plaintiff urges the Court to reverse the Commissioner's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and SSI on March 24, 2005, alleging that he became disabled on March 7, 2005, as the result of heart problems, trouble sleeping, vision problems, shortness of breath, and tiredness. (Tr. at 10, 69, 80). After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On April 26, 2007, ALJ Morton J. Gold, Jr. ("ALJ" or "ALJ Gold") held a video hearing. Plaintiff appeared and testified in Waycross, Georgia, while the ALJ presided over the hearing

AO 72A
(Rev. 8/82)

from Savannah, Georgia. Jackson McKay, a vocational expert, testified at the hearing. (Tr. at 10). The ALJ determined that Plaintiff was not disabled. (Tr. at 16). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 3-5).

Plaintiff, born on November 11, 1954, was fifty-two (52) years old when ALJ Gold issued his decision. Plaintiff has a high school education. (Tr. at 336). He has past relevant work experience as a heavy equipment operator, industrial maintenance repair helper, and garbage collector. (Tr. at 362).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the plaintiff is not engaged in such activity, then the second inquiry asks whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is not "severe," then disability benefits are denied. Yuckert, 482 U.S. at 141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App. 1; Yuckert, 482

U.S. at 141. If the impairment meets or equals one of the listed impairments, then the plaintiff is presumed disabled. Id. If the impairment does not meet or equal one of the listed impairments, then the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing his past relevant work. Id. If the claimant is unable to perform his past relevant work, then the final step of the evaluation process determines whether he is able to perform other work in the national economy, considering his age, education, and work experience. Yuckert, 482 U.S. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

ALJ Gold followed the sequential process to determine that Plaintiff has not engaged in substantial gainful employment since March 7, 2005. At Step Two, the ALJ determined that Plaintiff has the severe impairments of cardiomyopathy with ventricular tachycardia and insertion of pacemaker. However, the ALJ also determined, at Step Three, that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 12). The ALJ found that Plaintiff has the residual functional capacity to perform light exertional work, with the limitation that he should avoid concentrated exposure to hazardous work environments. (Tr. at 14). At the Fourth Step, the ALJ concluded that Plaintiff can not perform any of his past relevant work. (Tr. at 15). The ALJ found, at Step Five, that Plaintiff is not disabled because he has the ability to perform other jobs that exist in significant numbers in the national economy. (Tr. at 15-16).

## ISSUES PRESENTED

The issues presented in this review are whether ALJ Gold:

I.  properly discounted the opinion of Plaintiff's treating physician; and

II.  failed to assign proper weight to Plaintiff's subjective complaints.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the

appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I.     ALJ Gold properly discounted the treating physician's opinion.**

Plaintiff contends that the ALJ failed to properly discount the opinion of his treating physician, Dr. Satish Goel. (Doc. No. 10, p. 5). Plaintiff notes that Dr. Goel opined that he was permanently disabled. Plaintiff further notes that the ALJ's decision stated that Dr. Goel's opinion is of no evidentiary value and that the Class I/II classification was, by its own definition, not disabling. (Id. at 6). Plaintiff asserts that the obvious symptoms related to a Class I/II cardiac condition include fatigue, shortness of breath, and dizziness. Plaintiff further asserts that the vocational expert testified that no jobs existed in the national economy for a hypothetical person with those symptoms. (Id. at 6-7). Plaintiff contends that he meets the Commissioner's definition of disabled given the restrictions cited by the ALJ in his hypothetical. Plaintiff further contends that the ALJ's statement that the condition would not be disabling by definition is contradictory to his own hypothetical. Plaintiff asserts that the ALJ did not show good cause for discounting Dr. Goel's opinion. Plaintiff further asserts that the ALJ is required to state with specificity his reasons for not assigning weight to Dr. Goel's opinion, thus any post hoc rationale by the Commissioner supporting the ALJ is not permissible. (Id. at 7) (citing Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1989)).

Defendant contends that the ALJ properly discounted Dr. Goel's opinion. Defendant notes that the two forms submitted by Dr. Goel called for an assessment of Plaintiff's capacities and limitations, but Dr. Goel did not provide any details as to

limitations. (Doc. No. 13, p. 4). Defendant further notes that the ALJ's assessment of Plaintiff's residual functional capacity was based primarily on the assessments of State Agency physicians. (Id.). Defendant asserts that the ALJ may properly rely on the opinions of reviewing medical experts, even if they are contrary to the opinion of a treating physician, if the ALJ has an adequate reason for doing so. (Id.) (citing Wainwright v. Comm'r of Soc. Sec., 2007 WL 708971 (11th Cir. 2007)). Defendant further asserts that ALJ Gold's decision discussed expert medical opinion supporting his findings, contemporaneous medical documentation that showed significant improvement in Plaintiff's condition after surgery, and that there were no reports of disabling cardiac complaints in the treatment records. (Doc. No. 13, p. 5).

A treating physician's opinion is entitled to substantial weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical opinion is conclusory, unsupported by objective medical findings, or not supported by evidence from the record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F.2d at 583. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz, 825 F.2d at 279 (11th Cir. 1987). When the ALJ determines that "good cause" exists to disregard a treating physician's opinion, the ALJ must clearly articulate the reasons supporting this decision. Phillips v. Barnhart, 357 F.3d 1232,

1240-41 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).

ALJ Gold determined that Plaintiff suffers from the severe impairments of cardiomyopathy with ventricular tachycardia and insertion of pacemaker, Class I/II heart classification. ALJ Gold further determined that Plaintiff's severe impairments did not meet or medically equal a listed impairment. The ALJ remarked that Plaintiff's cardiac conditions briefly met the listings' requirements of severely decreased ejection fraction levels, but the requirements of § 4.00C.3 were not met because the ejection fraction levels did not remain at 30% or less for three months. The ALJ noted that Plaintiff's ejection fraction increased to 58% after surgery. ALJ Gold found that Plaintiff's mild sleep disorder, situational depression, skin rash, and cataracts are non-severe impairments. (Tr. at 12).

The ALJ observed that, after Plaintiff sought emergency treatment, an echocardiogram showed severe left ventricular dysfunction, ejection fraction of 15%, right-sided structures that appeared mildly enlarged, left atrium mildly enlarged, and mild tricuspid regurgitation. The ALJ further observed that improvement in systolic blood pressure occurred after right and left heart catheterization with cardiac angiography and intra-aortic balloon pump insertion was performed. ALJ Gold remarked that biventricular AICD pacemaker placement suggested multiple episodes of ventricular tachycardia at 120 beats per minute and ECK showed atrial pacing and ventricular pacing at 60 beats per minute. ALJ Gold further remarked that examination revealed no leg edema and Plaintiff was classified as Class I to II, symptomatic from congestive heart failure. The ALJ noted that there was no shortness of breath except

AO 72A
(Rev. 8/82)

7

on moderate exertion. (Tr. at 12). The ALJ further noted that a subsequent evaluation less than a month later showed severe ventricular dysfunction, advanced heart failure, no leg edema, and ejection fraction improved to 29%. Plaintiff was advised to continue walking, consume no alcohol, use no chewing tobacco, and reduce his weight. ALJ Gold observed that a stress test, heart rate, and spirometry were all normal a few months later. A subsequent ECG showed atrial pacing and ventricular pacing at 60 beats per minute. The ALJ noted that Plaintiff's next examination revealed that his heart rate and rhythm were normal, trace edema was found in his extremities, and he was determined to be at low risk for adverse cardiovascular events and did not need a cardiac transplantation. The ALJ further noted that an overnight oximetry was just mildly abnormal. Plaintiff maintains his oxygen saturation in the high 90's and does not use supplemental oxygen at home. ALJ Gold observed that Plaintiff reported to his doctor that he did not exercise on a regular basis; he fished occasionally; and he worked in his garden, yard, and around the house. ALJ Gold further observed that at Plaintiff's next examination, he appeared to be doing fairly well on his medication, but still did not exercise. (Tr. at 13).

The ALJ remarked that cardiac treatment notes show that Plaintiff seemed to be doing extremely well and that his cardiomyopathy was dramatically improved. The ALJ further remarked that Plaintiff's AICD pacemaker had not fired off since doing so twice the first week. ALJ Gold noted that laboratory studies revealed normal CBC, CMP, UA, PSA, T4, and TSH. ALJ Gold further noted that the triglycerides were borderline at 157, LDL was 105, and HDL was 37. The ALJ observed that Plaintiff did not have any chest pain or shortness of breath during two doctor's visits in 2006. The ALJ further observed

that Plaintiff was not having any arrhythmias or symptoms of congestive heart failure. ALJ Gold noted that the last echocardiogram showed improvement of left ventricular ejection fraction to 58%. In an examination, Plaintiff was alert and oriented; his lungs were clear; his heart was regular with no murmur or gallop; and there was no pedal edema. ALJ Gold observed that Plaintiff remained very obese and was again urged to lose weight, develop an exercise program, and continue taking medications. (Tr. at 13).

ALJ Gold noted that Plaintiff did not mention any psychological problems in his initial application, but evidence submitted with his reconsideration appeal indicated that he alleged being depressed. ALJ Gold observed that Dr. Goel stated that emotional factors do not contribute to the severity of Plaintiff's symptoms or functional limitations. The ALJ determined that Plaintiff's situational depression is non-severe. (Tr. at 14).

ALJ Gold found that Plaintiff's cardiomyopathy limits him to light exertional work and that he should avoid concentrated exposure to hazardous work environments. ALJ Gold considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence, other evidence, and opinion evidence. The ALJ noted that Plaintiff allegedly tires easily, is short of breath, and can no longer lift or carry sofas. The ALJ further noted that Plaintiff testified that he has heaviness in his arms and that he feels bad. ALJ Gold observed that Plaintiff allegedly becomes dizzy when sitting or standing quickly. ALJ Gold further observed that Plaintiff discontinued walking even though it helped him. Plaintiff used to be able to walk for one hour at a time, but can now only walk for one quarter of a mile and needs to stretch periodically to continue walking. The ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to produce

some of the alleged symptoms, but that Plaintiff's statements concerning the occurrence, intensity, duration, and limiting effects of those symptoms were not fully credible. (Tr. at 14). ALJ Gold observed that great weight was given to the State Agency medical/psychological consultants' opinions and findings that Plaintiff has the residual functional capacity for light exertional work because the opinions are well supported and consistent with other substantial evidence of record, including Dr. Goel's heart classification of Class I/II. The ALJ remarked that Dr. Goel's opinion that Plaintiff was permanently disabled was considered, but is not of any evidentiary value because it is not consistent with Plaintiff's activities of daily living and the Class I/II heart classification Dr. Goel assigned to Plaintiff, which, by its own definition, is not disabling. The ALJ observed that Plaintiff testified that he cooks, washes dishes, drives, attends church occasionally, fishes regularly with friends, does yard and garden work, feeds the chickens and dogs, has coffee in town, watches television, and occasionally eats out at a restaurant. (Tr. at 15).

ALJ Gold determined that Plaintiff is unable to perform any past relevant work. ALJ Gold observed that this determination was made based on vocational expert testimony and Plaintiff's residual functional capacity for no greater than light exertional work. ALJ Gold further observed that Plaintiff was approaching advanced age, has a high school education, and acquired no skills that are transferrable to light exertional work. (Tr. at 15). The ALJ remarked that Plaintiff's ability to perform work at all exertional levels is compromised by non-exertional limitations. The ALJ further remarked that the vocational expert testified that given Plaintiff's age, education, work experience, and residual functional capacity, he would be able to perform the job of mail

clerk, cleaner, and cloth folder. ALJ Gold observed that the vocational expert's testimony was consistent with the information contained in the D.O.T. ALJ Gold remarked that he accepted the opinion of the vocational expert because the record as a whole corroborates the validity of the submitted hypothetical profile. ALJ Gold found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy based on the testimony of the vocational expert and the Plaintiff's age, education, work experience, and residual functional capacity. Thus, ALJ Gold determined that Plaintiff was not disabled. (Tr. at 16).

ALJ Gold properly discounted Dr. Goel's opinion that Plaintiff was not disabled. The ALJ observed that great weight was given to the State Agency consultants' opinion that Plaintiff has the residual functional capacity for light exertional work because it is well supported and consistent with other substantial evidence of record, including the Class I/II heart classification assigned to Plaintiff by Dr. Goel. The ALJ further observed that Dr. Goel's opinion that Plaintiff is "permanently disabled" is an issue reserved to the Commissioner, was considered, and was found to be of no evidentiary value. The ALJ remarked that Dr. Goel's opinion is of no evidentiary value because it is not consistent with Plaintiff's light exertional activities of daily living or with the Class I/II heart classification Dr. Goel assigned to Plaintiff. (Tr. at 15). Plaintiff's contention that ALJ Gold's statement that the condition would not be disabling by definition is contradictory to his own hypothetical is without merit. Plaintiff asserts that "the obvious symptoms related to such a cardiac condition would be fatigue, shortness of breath, dizziness, etc." (Doc. No. 10, p. 6). Plaintiff further asserts that the vocational expert testified that no jobs existed in the national economy for a hypothetical person with those symptoms.

(Id.). However, Plaintiff neglects to mention that the vocational expert first testified that a hypothetical person with other symptoms consistent with a Class I/II heart classification would be able to find employment that exists in significant numbers in the national economy. As the hypothetical need only include the impairments which the ALJ accepts as true, it was not error for ALJ Gold to only use the vocational expert's response to the first hypothetical. See McKay v. Apfel, 1999 WL 1335578, *7 (M.D. Ala. 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)). Plaintiff's contention that the ALJ did not cite specific reasons for rejecting Dr. Goel's opinion is also without merit. ALJ Gold observed that Dr. Goel's opinion was not consistent with his assignment of a Class I/II heart classification or with Plaintiff's activities of daily living. (Tr. at 15). The ALJ's decision also documented medical records showing improvement in Plaintiff's condition after surgery. (Tr. at 12-13). Thus, the ALJ clearly articulated good cause to discount Dr. Goel's opinion by observing that the opinion is unsupported by objective medical findings and evidence from the record. See Lewis, 125 F. 3d at 1440; Phillips, 359 F. 3d at 1240-41.

II. **ALJ Gold properly discredited Plaintiff's subjective complaints.**

Plaintiff contends that ALJ Gold improperly discredited his subjective complaints. (Doc. No. 10, p. 7). Plaintiff asserts that the ALJ relied on his activities of daily living when assessing his credibility. (Id. at 8). Plaintiff further asserts that the ALJ failed to fully discuss the frequency and nature of a number of the activities he relies on in his credibility assessment. Plaintiff contends that participation in everyday activities of short duration such as housework or fishing does not disqualify a claimant from disability. (Id. at 9) (citing Lewis, 125 F. 3d at 1441). Plaintiff further contends that the activities of

daily living that ALJ Gold relied on are not dispositive evidence of a claimant's ability to perform work, thus ALJ Gold improperly rejected his subjective complaints. (Doc. No. 10, p. 9). Plaintiff testified that he is constantly fatigued, has to rest during the day, and gets dizzy when standing or sitting quickly. Plaintiff notes that the vocational expert testified that a hypothetical claimant with those symptoms would not be able to sustain competitive employment. Plaintiff contends that if his subjective complaints are accepted as true, he has met his burden of proving disability. (Id. at 10).

Defendant asserts that the ALJ properly discounted Plaintiff's subjective complaints. (Doc. No. 13, p. 4). Defendant further asserts that ALJ Gold provided a short, but adequate, recitation of the reasons he found Plaintiff's subjective complaints to be not credible. (Id. at 5). Defendant contends that the ALJ noted Plaintiff's activities of daily living, that medical experts considered Plaintiff able to do light work, and that there was a lack of medical support for Plaintiff's most extreme complaints. (Id. at 5-6). Defendant further contends that these were sufficient factors for the ALJ to discount Plaintiff's subjective complaints. Defendant asserts that while Plaintiff's activities of daily living might alone be legally insufficient for the ALJ to discount Plaintiff's subjective complaints, the daily activities were only one of the factors the ALJ considered when evaluating Plaintiff's credibility. (Id. at 6).

In order to award benefits based on subjective complaints of pain, the following is required: (1) evidence of an underlying medical condition and either (2) objective medical evidence which confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. Holt v. Sullivan, 921

AO 72A
(Rev. 8/82)

13

F.2d 1221, 1223 (11th Cir. 1991); Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)).

ALJ Gold provided explicit and adequate reasons for discrediting Plaintiff's subjective complaints. See Dyer, 395 F. 3d at 1210. The ALJ found that Plaintiff's statements concerning the occurrence, intensity, duration, and limiting effects of his symptoms were not entirely credible. ALJ Gold observed that great weight was given to the State Agency consultants' opinion that Plaintiff has the residual functional capacity to perform light exertional work. ALJ Gold further observed that Plaintiff's subjective complaints were not consistent with his activities of daily living. (Tr. at 14-15). Plaintiff asserts that participation in everyday activities of short duration does not disqualify a claimant from disability. However, participation in everyday activities was only one of the reasons given by the ALJ for discrediting Plaintiff's subjective complaints. The ALJ also noted that substantial evidence of record supports the State Agency consultants' opinion that Plaintiff was capable of doing light exertional work. Thus, Plaintiff's assertions are without merit because the ALJ properly discredited his subjective complaints.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 18th day of May, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE